1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11

| DENNIS NASRAWI, *et al*, | 1:09-CV-02061-OWW-GSA |
|---|---|
| Plaintiffs, | MEMORANDUM DECISION RE: PLAINTIFFS' MOTION FOR REMAND (Doc. 17.) AND DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' REPLY (Doc. 29.) |
| v. | |
| BUCK CONSULTANTS, LLC, *et al.,* | |
| Defendants. | |

19              **I.   INTRODUCTION.**

20       Before the court for decision is Plaintiffs' motion to remand

21  the case to the Stanislaus County Superior Court, pursuant to 28

22  U.S.C. § 1447(c).  Plaintiffs contend that the court lacks subject

23  matter jurisdiction over this action because inclusion as a

24  defendant of a California resident, Harold Loeb, prevents complete

25  diversity of citizenship between the parties under 28 U.S.C. §

26  1332.  Defendants oppose the motion on grounds that Plaintiffs

27  cannot recover against Mr. Loeb based on a negligence theory, and

28  that his presence in this action does not destroy diversity.

                              1

## II.  **BACKGROUND**.

**This is a negligence action filed by three beneficiaries of a public retirement trust against a provider of actuarial services, Buck Consultants, LLC, ("Buck") and one of its employees, Harold Loeb ("Loeb").   Defendant Buck, a Delaware limited liability company,[1] provided actuarial services to StanCERA, a public employee retirement system covering employees of the County of Stanislaus, City of Ceres, the Stanislaus Superior Court, and five special districts located within Stanislaus County.  (Compl. ¶ 2.) Loeb, a California resident, is employed by Buck Consultants as an actuary.   (Compl. ¶ 4, 7.)   Buck is wholly owned by ACS Human Resources Solutions, a Pennsylvania Corporation with its principal place of business in New Jersey.**

**On October 8, 2009 Plaintiffs Dennis Nasrawi, Michael O'Neal, and Rhonda Biesemeir, California residents and beneficiaries of StanCERA, filed a complaint against Defendants Buck Consultants and Loeb in Stanislaus Superior Court.[2]  The substance of the complaint is that "Buck and Loeb breached their duty of care in preparing StanCERA's January 9, 2007 actuarial valuations by using inappropriate actuarial assumptions."  (Compl. ¶ 14.)   In particular, Plaintiffs allege that the "9.22% employer contribution rate adopted by StanCERA, in reliance upon the actuarial valuation**

---

[1] Buck's principal place of business is New York.

[2] Plaintiffs, all former employees of Stanislaus County, allege that they obtained "vested contractual rights to receive pension and related benefits."  (Compl. ¶ 1.)  Plaintiffs state that they filed a "representative suit" because "StanCERA has failed or refused to assert a negligence claim on behalf of itself or the pension trust."   (Compl. ¶ 22.)

2

negligently prepared by Buck and Loeb, was insufficient to actuarially fund the benefits promised by the County." (Compl. ¶ 15.) As a result of Defendants' actuarial negligence, Plaintiffs allege that StanCERA suffered harm in the form of: (1) lost County employer contributions; (2) lost earnings on those contributions; and (3) costs paid to other actuarial firms to discover Defendants' negligence. The report is issued on Buck's letterhead as Consulting Actuary for StanCERA.

As to Defendant Loeb, Plaintiffs allege that he "owed a duty to exercise due care in performing actuarial services for StanCERA," and breached that duty. (Compl. ¶ 13.) They also allege that he "actively participated with, aided, and abetted in StanCERA's breach of fiduciary duty by concealing their negligence for almost two years." (Compl. ¶ 18.) According to Plaintiffs, Loeb covered up the effects of his actuarial negligence - and that of Buck and StanCERA - for his "own financial gain." (Compl. ¶ 19.)

On November 22, 2009, this case was removed on the basis of diversity jurisdiction.[3] (Doc. 1.) The notice of removal provides that the presence of Loeb as a defendant in the action does not defeat diversity jurisdiction because Loeb is a fraudulently joined "sham defendant." (Id.)

On December 15, 2009, Plaintiffs moved to remand this action based on their assertion of a negligence claim against a resident

---

[3] The notice of removal provides that removal is proper because "this is a civil action between citizens of different states and the matter in controversy exclusive of interest and costs, exceeds the sum or value of $75,000."

of California, Mr. Loeb.   (Doc. 17.)   According to Plaintiffs, "[b]ecause well-established California law provides [that] Loeb is liable for his own negligence, complete diversity of citizenship is lacking and the case should be remanded to state court."   (Id.)

In support of their opposition, Defendants submitted: (1) the declaration of Michael Conger; (2) StanCERA's Board Minutes from January 13 and February 24, 2007; (3) various actuary reports allegedly submitted by Buck to StanCERA in 2006, 2007, and 2008; (4) an annual Certification letter dated January 15, 2007; and (5) a "Notice of Lodgement."[4] (Docs. 17-3 through 17-5.)

Defendants opposed the motion on March 8, 2010.   (Doc. 23.) While Defendants acknowledge that both Plaintiffs and Loeb are California citizens, they argue that federal diversity jurisdiction is proper in this case because: (1) Loeb is a fraudulently joined defendant, and should not be considered in establishing diversity; (2) Buck Consultants are not California citizens; and (3) the amount in controversy exceeds $75,000.

In support of their opposition, Defendants submitted: (1) the declaration of Harold Loeb; and (2) the declaration of Karl

---

[4] Minutes from a public agency's board meeting are public records subject to judicial notice. *See Sumner Peck Ranch, Inc. v. Bureau of Reclamation*, 823 F. Supp. 715, 724-25 (E.D. Cal. 1993) (taking judicial notice of irrigation board's minutes).   The Court takes judicial notice of these documents.   However, Defendants object to the remaining documents on the grounds that they lack personal knowledge.   Defendants are correct.   The declarant was not present when these documents were drafted and/or presented to the StanCERA Board.   Despite being publicly available on StanCERA's website, the declarant lacks personal knowledge of the authenticity and origin of these documents.

4

Lohwater, general counsel for Buck Consultants.[5]  (Docs. 24 & 25.)
The declarations describe Buck's nationwide operations and Mr.
Loeb's specific job responsibilities and employment status at Buck.
Specifically, Mr. Loeb declares that he is not an "owner/member of
Buck, nor an officer/director of Buck," and that his work for
StanCERA "did not include any tasks that are outside the usual
scope of what I do for other Buck clients [preparing actuarial
valuation reports and experience studies]."  (Doc. 24, ¶ 2.)
According to Mr. Lohwater, "nearly all of Buck's top executives are
located [at] Buck's headquarters in [New York]" and "all strategic
corporate decision-making occurs in New York."  (Doc. 25, ¶ 4.)
Daily operations, as well as payroll, accounting, marketing, and
human resources are also based in New York.  (Id.)

### III.  LEGAL STANDARD.

Federal courts have original jurisdiction over civil actions
where the amount in controversy exceeds $75,000, exclusive of
interest and costs, and the case is between citizens of different
states.  28 U.S.C. § 1332.  Diversity jurisdiction under § 1332
requires that each plaintiff be diverse from each defendant.  *Exxon
Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005)
(citing *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 375,
(1978)).  To protect the jurisdiction of state courts, removal
jurisdiction is strictly construed in favor of remand.  *Harris v.
Bankers Life and Cas. Co.*, 425 F.3d 689, 698 (9th Cir. 2005)
(citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09,

---

[5] Both declarations were signed under penalty of perjury.

(1941)).  **Any doubt as to the right of removal must be resolved in favor of remand.**  *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992).  **"Th[is] 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper."**  *Id.* (internal citations omitted).

**But removal is proper despite the presence of a non-diverse defendant if that defendant is a "fraudulently joined" or "sham" defendant.**  *See Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996).  **A defendant has been fraudulently joined if the plaintiff fails to state a claim against a resident defendant, and the failure is "obvious according to the well-settled rules of the state."**  *United Computer Sys. v. AT & T Corp.*, 298 F.3d 756, 761 (9th Cir. 2002).  **In the Ninth Circuit, a non-diverse defendant is deemed a sham defendant if, after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the party whose joinder is questioned.**  *Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1426 (9th Cir. 1989).  **A court may look beyond the pleadings to determine if a defendant is fraudulently joined, but "a plaintiff need only have one potentially valid claim against a non-diverse defendant" to survive a fraudulent joinder challenge.**  *See Knutson v. Allis-Chalmers Corp.*, 358 F. Supp. 2d 983, 993-95 (D. Nev. 2005) (summarizing cases);  *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998).  **Accordingly, a defendant seeking removal based on an alleged fraudulent joinder must do more than show that the complaint at the time of removal fails to state a claim against the non-diverse defendant.**  *See Burris v. AT & T Wireless, Inc.*, 2006 WL 2038040, at *2 (N.D. Cal.

2006).  Remand must be granted unless the defendant shows that the plaintiff "would not be afforded leave to amend his complaint to cure [the] purported deficiency."  *Id*. at *2.

## IV.  DISCUSSION.

### A.  Preliminary Issues

#### 1.  *Defendants' Motion to Strike*

Defendants move to strike Plaintiff's April 26, 2010 reply on the grounds that it was filed five weeks after Plaintiffs were required to file a reply.  According to Defendants, "Plaintiffs knowingly filed an untimely reply brief without leave of Court in bad faith and in violation of this Court's order, and should be sanctioned accordingly."  The gravamen of Defendants' motion is that although the court continued the hearing dates for the motion for remand, the court did not continue the filing deadlines and, in fact, all briefing on the motion for remand was due on March 8, 2010.  Defendants explain:

> Plaintiffs initially set the motion for hearing on March 8, 2010, and approximately five weeks later the Court issued an order continuing the hearing to March 22, 2010.  Three weeks before the continued hearing date, the Court issued the following order:
>
>> Due to the press of business the 17 MOTION to REMAND, 19 MOTION to DISMISS Hearings currently set for 3/22/2010 have been moved to 5/10/2010 at 10:00 AM in Courtroom 3 (OWW) before Judge Oliver W. Wanger, the Initial Scheduling Conference currently set for 4/1/2010 has been moved to 6/18/2010 at 08:15 AM in Courtroom 3 (OWW) before Judge Oliver W. Wanger. All motion related deadlines are to remain in effect.
>
> The Court's order is clear that the Court was only moving the hearing dates to May 10, 2010, and all

7

1

2

3

> motion related deadlines were to remain in effect -
> i.e., the briefing would continue under the existing
> briefing schedule established by the March 22 hearing
> date.

4

**(Doc. 29 at 2:14-2:24.)**

5

6

The untimeliness issue was resolved during oral argument on
May 10, 2010.  Defendants' motion is DENIED.

7

8

### B.   Merits

9

10

11

12

13

14

15

16

17

18

Plaintiffs move the court to remand the case for lack of
complete diversity.  Plaintiffs argue that they have at least the
possibility of recovering against Loeb because: (1) *United States*
*Liability Ins. Co. v. Haidinger-Hayes, Inc*., 1 Cal. 3d 586 (1970),
is distinguishable because Loeb personally breached professional
duties he owed to the trust and beneficiaries, not just duties he
owed to his employer; (2) he committed an intentional tort because
he breached fiduciary duties he owed to the trust and its
beneficiaries; and (3) he is liable to Plaintiffs as a principal
under California Civil Code § 2343(c).

19

20

21

22

23

24

25

26

27

28

Defendants rejoin that Loeb's presence in this action does not
destroy diversity as Plaintiffs cannot recover against Mr. Loeb
based on a negligence theory.  According to Defendants, this is an
easy case:  Under well-established California law, Loeb cannot be
held liable individually for alleged negligence in performing
duties in the course and scope of his employment that allegedly
caused economic loss to a third party.  Because the alleged
negligent actions were taken by Buck Consultants - Loeb was acting
in his "official capacity" at all times as an agent for a disclosed
principal - his conduct cannot be considered/interpreted as "active

participation."

The analysis of Loeb's liability begins with *United States Liability Ins. Co. v. Haidinger-Hayes, Inc*., 1 Cal. 3d 586 (1970), the seminal case in this context. Defendants cite *Haidinger-Hayes* for the proposition that an "employee cannot be held individually liable for negligence because his duty of care is owed to his employer, not the third party [...] therefore the essential element of a negligence cause of action (duty) is absent." (Doc. 23 at 7:18-7:21.) According to Defendants, *Haidinger-Hayes* is "squarely on point" and forecloses Plaintiffs' negligence claim against Loeb.

*Haidinger-Hayes* stands for the proposition that directors and/or officers of a corporation do not incur personal liability for torts of the corporation merely by reason of their official position, unless they personally participate in the wrong. 1 Cal. 3d at 594-95. In *Haidinger-Hayes*, Plaintiff insurance company filed a negligence action against two defendants - a corporate insurance agent and its president and CEO (Mr. Haidinger) - for negotiating and issuing an insurance policy with insufficient premiums to cover anticipated losses. *Id*. at 591-93. Plaintiff insurance company sought to recovery monetary losses caused by Defendants' alleged negligence. The trial court found Mr. Haidinger individually liable based on evidence that he had personally carried on the negotiations with the insured's broker, reviewed and analyzed the underwriting information concerning the insured's risk, issued the policy setting the allegedly low premium rate, and reduced the reserves for open claims without checking to ascertain the validity of the prior reserves. *Id*. On appeal, Mr. Haidinger contended that he was not a fiduciary to Plaintiff and

9

owed it no duty of care.  *Id*. at 594.  The Supreme Court agreed

with Mr. Haidinger and reversed the judgment against him:

> As president and principal officer of defendant corporation, the individual defendant was a fiduciary to and an agent of that corporation.  He had a duty to the corporation to exercise his corporate powers in good faith and with a view to its interests.  Directors and officers are not personally liable on contracts signed by them for and on behalf of the corporation unless they purport to bind themselves individually [...] the acts of this defendant were done in the course and scope of his employment, for and on behalf of the corporation, and not as a contracting party [...]
>
> Directors or officers of a corporation do not incur personal liability for torts of the corporation merely by reason of their official position, unless they participate in the wrong or authorize or direct that it be done.  They may be liable, under the rules of tort and agency, for tortious acts committed on behalf of the corporation.  They are not responsible to third persons for negligence amounting merely to nonfeasance, to a breach of duty owing to the corporation alone; the act must also constitute a breach of duty owed to the third person.

*Id*. at 594-95.

The California Supreme Court in *Haidinger-Hayes* set forth an

additional limitation on imposing liability against an "active"

agent:

> Liability imposed upon agents for active participation in tortious acts of the principal *have been mostly restricted to cases involving physical injury*, not pecuniary harm, to third persons. More must be shown than breach of the officer's duty to his corporation to impose personal liability to a third person upon him.

*Id*. at 595 (emphasis added).

Plaintiffs distinguish *Haidinger-Hayes* on grounds that they

"are not contending that Loeb has *vicarious* liability for Buck's

breach of contract [...] they are contending that he *personally*

failed to exercise due care as a professional actuary by using

10

inappropriate actuarial assumptions."   (Doc. 17 at 7:5-7:9) (emphasis in original).   Rather, Plaintiffs argue that *Haidinger-Hayes* supports the proposition that "officers may be personally liable for the torts of the corporation if they are personally involved in these torts."   Plaintiffs contend that *Michaelis v. Benavides*, 61 Cal. App. 4th 681 (1998) applies to the facts of this case.[6]

*Michaelis* involved a general contractor who subcontracted the cement work on the Michaelis' patio and driveway to a subcontractor, A & J Stamped Concrete, Inc ("A & J").   Mr. Benavides was the president, director and 50 percent stockholder of A & J.   He was the only person at A & J who held a state contractor's cement license, personally bid and negotiated for the job, and  personally made the construction decisions for the patio and driveway.   His brother, however, provided most of the manual labor.   The cement job resulted in "severe cracking" and incorrectly placed drains that "posed a hazard to the home's structural integrity and caused a safety hazard to persons entering or leaving the property."   *Id*. at 684.   Mr. and Mrs. Michealis sued A & J and Mr. Benavides for damages.   The trial court dismissed the negligence action against Mr. Benavides based on *Haidinger-Hayes*. The appellate court reversed, finding that the case presented a

---

[6] Specifically, Plaintiffs argue that: "The facts of this case are distinguishable from those of Haidinger-Hayes for the same reasons the facts of Michaelis were distinguishable from those of Haidinger-Hayes."   (Doc. 17 at 7:4-7:6.)

"factual situation wholly unlike" that found in *Haidinger-Hayes*:[7]

> [The] allegations here show that respondent did not merely make a corporate policy decision which was carried out by someone else.   He personally participated in and directed the construction of appellants' patio and driveway.  He personally bid for appellants' job and he personally negotiated with appellants for completion of the job.   He personally made the decisions to use cheaper materials and construction methods which allegedly resulted in the patio's and driveway's structural inadequacies [...]

> [T]he distinguishing features in Haidinger-Hayes which absolved the defendant corporate officer of personal liability - the breach of duty to the corporation alone, the non-tortious personal conduct, and the absence of physical damage - do not exist here.   The instant circumstances involve a corporate officer's personal tortious conduct, which conduct breached a duty of care to a third party and caused the third party to suffer physical damage to his property.

*Id*. at 685-87.

*Michaelis* also harmonized its ruling and *Frances T. v. Village Green Owners Assn*., 42 Cal. 3d 490 (1986), another case cited by Plaintiffs:

> The Supreme Court in [Frances T] reviewed a corporate officer's duty of care.   In that case, plaintiff condominium owner was raped and robbed in her condominium after the owners association had refused to allow her to utilize exterior lighting at her unit to protect herself against crimes occurring in the area of her condominium.   Plaintiff sued the individual directors on the association's board, claiming they breached a duty of care owed to her by ordering her to remove the external lighting she had installed.

---

[7] The Court in *Michaelis* also relied on Mr. Benavides' stipulation that he was negligent in constructing the patio and driveway.   *See id*. at 686 ("They agreed that respondent was individually negligent in building appellants a patio and driveway [...] [t]his acknowledges that a breach of duty owed to appellants as third parties was violated, rather than merely a breach of duty respondent owed to A & J."). There is no such stipulation in this case.

1

2

3

4

5

6

7

8

9

10

> Frances T. interpreted Haidinger-Hayes as prohibiting a corporate officer's vicarious liability, based on his official status in the corporation, for torts committed by his corporation in which he does not personally participate or direct. Frances T. further interpreted Haidinger-Hayes to allow an officer's liability for his own tortious conduct. 'Unlike ordinary employees or other subordinate agents under their control, a corporate officer is under no compulsion to take action unreasonably injurious to third parties. But like any other employee, [officers] individually owe a duty of care, independent of the corporate entity's own duty, to refrain from acting in a manner that creates an unreasonable risk of personal injury to third parties. The reason for this rule is that otherwise, a[n officer] could inflict injuries upon others and then escape liability behind the shield of his or her representative character, even though the corporation might be insolvent or irresponsible.'

11

12

13

14

15

16

17

18

> Additionally, in contrast to the alleged facts here, the plaintiff in Haidinger-Hayes did not experience any personal injury or injury to property, but only pecuniary harm in the form of a monetary loss under an insurance policy. Liability imposed upon agents for active participation in tortious acts of the principal have been mostly restricted to cases involving physical injury, not pecuniary harm, to third persons. Respondent's negligence here allegedly caused serious physical damage to appellants' home [...] [i]t is not unlikely that personal injury could have resulted from the unsafe conditions caused by the structurally defective patio and driveway. Physical harm may be a consequence in either a personal injury or a property damage case.

19

20

*Id.* at 686-87 (citations omitted).

21

22

23

24

25

26

27

28

Plaintiffs broadly interpret the "active participation" language of *Haidinger-Hayes* to argue Loeb is personally liable on a negligence theory, because he signed an "actuarial certification" letter on January 15, 2007 and listed several professional credentials after his name. Moreover, he was part of the actuarial team that formatted the assumptions and, on a few occasions, presented those findings to StanCERA. Plaintiff argues that these facts, taken together, rise to the level of "active participation"

13

recognized by *Michaelis* and *Frances T*.

Plaintiffs' characterization of Loeb's conduct is inconsistent with California Supreme Court authority. Here, the proffered evidence is limited to Loeb's "corporate duties" as an actuary/employee at Buck Consultants and was not "directed" toward Plaintiffs in response to their actions and/or requests. Loeb was performing his actuarial duties as part of a larger actuarial firm that had a contract with StanCERA. Loeb was not an owner, director, majority shareholder or a named party to the StanCERA contract. He never personally negotiated the terms, payment schedule, or took any action directed at Plaintiffs. Loeb's actions do not rise to "personal participation," his duty was to Buck Consultants, not Plaintiffs or StanCERA.

The decisions in *Michaelis* and *Frances T*. do not dictate a different result. In *Michaelis*, the defendant was a qualifying licensee, president, director, and 50 percent stockholder of that corporation. The Court found that Defendant was not entitled to nonsuit because he *personally* participated in the substandard construction work. *Michaelis* does not support Plaintiffs' contention that an actuary is necessarily personally liable for all negligent actuarial work produced by a corporate entity or one its employees. Rather, *Michaelis* stands for the proposition that a qualifying licensee, officer, director, or shareholder of a corporate contractor cannot be liable for negligent construction work unless he or she personally breaches a legal duty owed to a plaintiff by personally participating in the negligent work or authorizing or directing that the negligent work be done. The facts here are different. Loeb is a corporate employee who, with

1    other employees, worked on actuary calculations.   Loeb did not

2    contract to provide his services nor was the job premised on his

3    personal performance of the work.

4       *Self-Insurers' Security Fund v. ESIS, Inc.*, 204 Cal. App. 3d

5    1148, 1163 (1988) addresses *Francis T*.   On similar facts, *ESIS,*

6    *Inc.* found that although the complaint recited *Francis T*.'s "magic

7    words," it did not resolve whether the defendant owed a duty of

8    care to third parties:

9
10         The opinion in Francis T. responded to an especially troubling factual situation in which the plaintiff condominium owner, whose unit previously had been burglarized, installed her own exterior lights after the owners' association failed to act on repeated requests for lighting. It was well known by the association directors that the project was subject to an 'exceptional crimewave' at the time. The directors ordered the lighting removed because it violated the project's covenants, conditions and restrictions. Plaintiff complied with the order and was raped and robbed the very night she disconnected the lighting.

15
16         In discussing the nature of the duty the directors' owed to plaintiff, the court in Francis T. discussed the two traditional limits on a corporate officer's personal liability for negligence as set forth in United States Liab., namely, (1) "the oft-stated disinclination to hold an agent personally liable for economic losses when, in the ordinary course of his duties to his own corporation, the agent incidentally harms the pecuniary interests of a third party; and (2) the traditional rule that directors are not personally liable to third persons for negligence amounting merely to a breach of duty the officer owes to the corporation alone.

22
23         The present case fits squarely within both of these limits and is distinguished easily from Francis T., which involved alleged tortious conduct resulting in serious physical injury to the plaintiff. The directors' conduct [in Francis T.] specifically was directed towards the plaintiff in response to her actions and requests.

27    *Id.* at 1162-63 (citations omitted).

28       Here, Loeb's lack of "personal participation" is clear from

the documents submitted by the parties in connection with this motion.    First,  Loeb  signed  every  document  on  Buck  Consultants stationary and introduced the actuarial results with an appropriate plural  pronoun.    For  instance,  Loeb's  signature  appears  on  a January 9, 2007 letter wherein he states: "We are pleased to report on the actuarial valuation of the [StanCERA] as of June 30, 2006." (Doc. 17-4, pg. 5.)   The same is true as to the attached January 4 and January 15, 2007 letters, as well as the Board Minutes.   (Docs. 17-4 and 17-5.)   Second, there are a number of Buck employees who worked on the actuarial tables and presented actuarial results to the  StanCERA  board,  yet  Mr.  Loeb  is  identified  as  the  "active participant."    Buck  Consultants,  not  Loeb,  had  an  express contractual duty to StanCERA.   Loeb's conduct did make him a party to  the  contract,  nor  did  it  create  individual  liability  when  he signed letters on behalf of the corporation, not individually. *Compare Slottow v. American Casualty Co.*, 10 F.3d 1355 (9th Cir. 1993)  (mere  fact  that  Defendant  signed  the  agreements  in  the ordinary course of his duties as President did not convert his actions into the type of personal direction or participation in the tort  that  would  expose  him  to  substantial  risk  of  personal liability) *with Carolina Cas. Ins. Co. v. RDD, Inc.*, --- F. Supp. 2d ----, 2010 WL 597097 at *6 (N.D. Cal. Feb. 17, 2010) ("Here, Lemke alleged that Devincenzi sexually harassed her, and Plaintiff defended and settled Lemke's claims pursuant to a reservation of rights.  Moreover, Devincenzi signed the false application himself. Therefore, the present case is distinguishable from one in which corporate  officers  are  not  liable  solely  by  reason  of  their official  position.").    Loeb  did  not  have  a  personal  duty  to

StanCERA at the time he signed letters on behalf of Buck and made presentations to the Board. None of this took Loeb outside the scope of his duties as a corporate employee. Here, Plaintiffs' allegations allege nothing more than Loeb performing his "corporate duties" in the course and scope of his corporate employment.

Plaintiffs' conspiracy allegations do not change the remand analysis. According to Plaintiffs, Loeb is liable for StanCERA's breach because he "aided and abetted that breach." The Complaint provides, in relevant part:

> 18. Buck and Loeb have actively participated with, aided, and abetted in StanCERA's breach of fiduciary duty by concealing their negligence for almost two years.
>
> 19. Buck and Loeb have participated with, aided, and abetted in StanCERA's breach of fiduciary duty for their own financial gain.

(Compl. at ¶'s 18-19.)

Plaintiffs' argument is a nonstarter. First, they cite *Fiol v. Doellstedt,* 50 Cal. App. 4th 1318 (1996) for the proposition that "liability for aiding and abetting may be imposed on one who aids and abets the commission of an intentional tort if the person knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." *Id.* at 1325-26. *Fiol* involved a second-tier supervisor's failure to take action when plaintiff reported to him that his immediate supervisor was sexually harassing him - an unlawful employment

practice.[8]   It is distinguishable on that basis alone.   Second, *Fiol* and its progeny emphasize that liability for aiding and abetting may only be imposed for the commission "of an intentional tort."   Plaintiffs have not alleged an intentional tort against Loeb; they only allege negligence.

The same reasoning applies to Plaintiffs' reliance on California Civil Code § 2343(c).   That section provides that '[o]ne who assumes to act as an agent is responsible to third persons as a principal for his acts in the course of his agency [...] when his acts are wrongful in their nature."   *Midwest Television, Inc. v. Scott, Lancaster, Mills & Atha, Inc.*, 205 Cal. App. 3d 442, 449 (1998).   Plaintiffs contend that "[b]ecause professional negligence and aiding and abetting a breach of fiduciary duty are both 'wrongful in their nature,' Loeb has personal liability."   In further support, Plaintiffs argue that the "[California] Legislature drew no distinction between negligence and other 'wrongful' acts," and it did not distinguish between wrongful acts causing bodily/physical injury and those causing only economic

---

[8]   *Fiol* imposed liability against the second-tier supervisor for a number of reasons, including that "imposition of individual liability furthers the purposes of the FEHA." *Id.* at 1341.   *Fiol* explained: "Supervisory personnel who, with knowledge of sexual harassment occurring in the workplace, or of a complaint of such misconduct, fail to prevent the wrongful conduct should be held personally liable under the FEHA.   Holding such individuals civilly liable furthers the public policy underlying the act.   The Legislature, in enacting the FEHA, sought to protect the right to hold employment free from discrimination or harassment on the basis, inter alia, of sex.   The purpose of the FEHA was to provide effective remedies to eliminate such wrongful practices.   The elimination of unlawful employment practices can best be achieved by holding the guilty parties responsible." *Id.* at 1341-42.

1   injury.

2       Plaintiffs' arguments based on § 2343(c) are unpersuasive.

3   Section 2343(c) only makes an agent liable for affirmative

4   misfeasance. *Ruiz v. Herman Weissker, Inc.*, 130 Cal. App. 4th 52,

5   65 (2005). It does not render an agent liable to third parties for

6   the failure to perform duties owed to the principal. *Id*.

7   Disregarding the conclusions of law that Loeb "aided and abetted"

8   his employer, the complaint does not allege any specific acts of

9   affirmative misfeasance with respect to the performance of his

10  actuarial duties. *Hoffman v. May*, 313 F. App'x 955 (9th Cir. 2009)

11  is instructive:

12          Hoffman's assertion that May can nonetheless be held
            liable for her 'wrongful acts' pursuant to California
13          Civil Code section 2343(3) does not save his claim.
            Although an agent may be held liable for his own
14          'wrongful acts' under section 2343(3), that statute
            'does not render an agent liable to third parties for
15          the failure to perform duties owed to his principal.'
            Hoffman's claim fails because he premises May's alleged
16          liability on that very theory, asserting that she
            failed to apprise Lions Gate of the sums owed to
17          Jonesfilm. Based on the foregoing, we conclude that
            the district court properly [denied the motion to
18          remand] [and] dismissed the amended complaint against
            May.
19

20  *Id*. at 958.

21      Plaintiffs' dependence on § 2343(c) is flawed for another

22  reason, namely that it is inconsistent with *Haidinger-Hayes'*

23  holding that "liability imposed upon agents is limited to cases

24  involving physical injury and/or property damage."[9]  1 Cal. 3d at

25

26          [9] By analogy, California Courts have held that an independent
    adjuster engaged by an insurer owes no duty of care to the claimant
27  insured, with whom the adjuster has no contract. The adjuster is
    not liable in tort to the insured for alleged negligent claims
28  handling which causes only economic loss. *Sanchez v. Lindsay*

595.  As currently pled, this is an economic injury case involving alleged actuarial negligence, nothing more.  Plaintiffs do not distinguish the relevant case law, including *Haidinger-Hayes*, *Michaelis* and *Frances T.*, with § 2343(c).  Additionally, while citing § 2343(c) generally, Plaintiffs do not provide a single case citation where § 2343(c) was analyzed and applied to find liability against a corporate employee for duties performed in the course and scope of regular employment.[10]

Courts have held that a defendant is not a fraudulently joined or a sham defendant simply because the facts and law may further develop in a way that defendant or the defendant is dismissed.  *See Dickinson v. Allstate Insurance, Co.*, 09-1374-AG-ANX, 2010 WL 366583 (C.D. Cal. Jan. 25, 2010).  On the current record, Loeb owed no duty to Plaintiffs as a matter of well-established California law.  It is equally as clear that Loeb was not "personally involved" in the wrongdoing to the same degree as the defendants in *Michaelis* and *Frances T*.  Plaintiffs' attempts to convert actuarial negligence resulting in economic loss into an affirmative misfeasance case against an individual actuary are without legal or factual support.  *Slottow v. American Casualty Co.*, 10 F.3d 1355 (9th Cir. 1993) provides the last word:

> Although Slottow may have faced liability to the bank for his mistakes, 'a corporation's employees owe no independent fiduciary duty to a third party with whom they deal on behalf of their employer.'  The mere fact that Slottow signed the agreements in the ordinary

*Morden Claims Servs., Inc.*, 72 Cal. App. 4th 249, 255 (1999).

[10]  The aiding and abetting allegations add nothing under § 2343(c) because Loeb, as a corporate employee, is bound to carry out and perform his actuarial work incident to his employment.

course of his duties as President of FNT does not convert his actions into the type of personal direction or participation in the tort that would expose him to substantial risk of personal liability.

*Id.* at 1359 (citations omitted).

Defendants have met their burden of establishing that Loeb is a "sham defendant" whose presence in this action does not bar removal and exists for the purposes of defeating diversity jurisdiction.   His citizenship is disregarded.   If discovery reveals different facts, the matter can be revisited.   Plaintiffs' motion to remand is DENIED.

**V. <u>CONCLUSION</u>.**

For the reasons stated:

1.    Defendants' motion to strike Plaintiffs' reply is DENIED; and

2.    Plaintiffs' motion to remand this case to the Stanislaus County Superior Court is DENIED.

IT IS SO ORDERED.

Dated:    **May 11, 2010**              **/s/ Oliver W. Wanger**
                                UNITED STATES DISTRICT JUDGE