**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DENNIS NASRAWI, *et al*,<br><br>    Plaintiffs,<br><br>    v.<br><br>BUCK CONSULTANTS, LLC, *et al.*,<br><br>    Defendants. | 1:09-CV-02061-OWW-GSA<br><br>MEMORANDUM DECISION RE:<br>PLAINTIFFS' RENEWED MOTION TO<br>REMAND (Doc. 51.) |

I.  INTRODUCTION.

Before the court for decision is Plaintiffs' renewed motion to remand the case to the Stanislaus County Superior Court, pursuant to 28 U.S.C. § 1447(c).  Plaintiffs previously moved to remand the action to state court, however, that motion was denied on grounds that Mr. Loeb was a "sham" defendant whose presence in the action did not defeat diversity jurisdiction.  Plaintiffs subsequently filed a second amended complaint that includes, among other things, genuine factual content and a breach of fiduciary duty claim against Mr. Loeb.  That pleading is the basis for the renewed motion.

Defendants oppose the renewed motion, arguing that Plaintiffs' amended pleading does not resolve or otherwise improve on the original complaint.

1

## II.  BACKGROUND.

The procedural and factual background in this case are summarized in the previous Memorandum Decisions, filed on May 12, 2010 and June 29, 2010, in brief:[1] On October 8, 2009, Plaintiffs Dennis Nasrawi, Michael O'Neal, and Rhonda Biesemeir, California residents and beneficiaries of StanCERA, filed a complaint against a provider of actuarial services, Buck Consultants, LLC, ("Buck"), and one of its employees, Harold Loeb ("Loeb").[2]  Plaintiffs filed their complaint against Defendants Buck Consultants and Loeb in Stanislaus Superior Court.

On November 22, 2009, this case was removed on the basis of diversity jurisdiction. (Doc. 1.)  The notice of removal provides that the presence of Loeb as a defendant in the action does not defeat diversity jurisdiction because he is a fraudulently joined "sham defendant." (Id.)

On December 15, 2009, Plaintiffs moved to remand this action based on their assertion of a negligence claim against a resident of California, Mr. Loeb. (Doc. 17.) The motion was granted on May

---

[1] *See, e.g., Nasrawi v. Buck Consultants, LLC,* --- F. Supp. 2d ----, 2010 WL 1948641 (E.D. Cal. May 12, 2010); *Nasrawi v. Buck Consultants, LLC,* NO. 1:09-CV-02061, 2010 WL 2629071 (E.D. Cal., June 29, 2010).

[2] StanCERA is a public employee retirement system covering employees of the County of Stanislaus, City of Ceres, the Stanislaus Superior Court, and five special districts located within Stanislaus County.  Defendant Buck, a Delaware limited liability company with wits principal place of business in New York, provided actuarial services to StanCERA.  Loeb, a California resident, is employed by Buck Consultants as an actuary.  Buck is wholly owned by ACS Human Resources Solutions, a Pennsylvania Corporation with its principal place of business in New Jersey. Buck's principal place of business is New York.

2

12, 2010 on the basis of Plaintiffs' conclusory pleading that Loeb was a "'sham defendant' whose presence in this action d[id] not bar removal and exists for the purposes of defeating diversity jurisdiction" and that California law barred Plaintiffs from holding Loeb individually liable for alleged negligence in performing duties in the course and scope of his employment that allegedly caused economic loss to a third party. *Nasrawi v. Buck Consultants, LLC,* 713 F. Supp. 2d 1080, at 4-10 (E.D. Cal. 2010). An express reservation to revisit the merits of the remand motion was made if "discovery reveals different facts." *Id.* at 10.

On January 19, 2010, Defendants moved to dismiss the entire complaint because Plaintiffs lack standing and Loeb cannot be sued individually.[3]  (Doc. 19.)  Plaintiffs opposed the motion to dismiss on April 26, 2010.  (Doc. 26.)  On June 29, 2010, the motion was granted with leave to amend.  (Doc. 40.[4])

Plaintiffs filed a first amended complaint ("FAC") against Defendants Buck and Loeb on August 2, 2010.  (Doc. 41.)  In addition to the original negligence-based claims, the FAC included allegations that Loeb "aided and abetted in StanCERA's breach of fiduciary duty by allowing the County to underfund the pension system [] and concealing these actuarial schemes for years." (FAC ¶ 39.)  It is further alleged that Buck and Loeb "concealed

---

[3] With respect to Buck, Defendants argued that "the action can only be brought by StanCERA in its capacity as trustee, and cannot be brought by Plaintiffs as trust beneficiaries."  Further, Defendants argued that Plaintiffs' failure to state a claim against Loeb is established by the May 12, 2010 Memorandum Decision.

[4] *Nasrawi v. Buck Consultants, LLC,* NO. 1:09-CV-02061, 2010 WL 2629071 (E.D. Cal., June 29, 2010).

3

StanCERA's conduct [] by singing false actuarial certification letters intended to mislead beneficiaries and the public." (FAC ¶ 38.)

On August 30, 2010, Defendants moved to dismiss each cause of action contained in the FAC. (Doc. 47.) Plaintiffs opposed the motion on September 27, 2010. (Doc. 48.) Plaintiffs' opposition also renewed their motion to remand. (Id.) An October 13, 2010, Minute Order provided: "the opposition will be treated as a renewed motion to remand" and set a briefing schedule only on the remand issue. (Doc. 50.) On October 20 and 25, 2010, the parties filed supplemental briefing, limited to the issue of remand. (Docs. 51 and 52.)

Oral argument was held on November 1, 2010. Plaintiff was directed to file a second amended complaint to "[s]tate specifically what the facts are in this case that support the fraud, the aiding and abetting and/or the conspiracy, whatever it is, to achieve the unlawful result."[5] An November 10, 2010 notified the parties the Court intended to treat the filing of the amended pleading as a "Renewed Motion to Remand." Plaintiff filed a second amended complaint ("SAC") on November 30, 2010, advancing claims for actuarial negligence and breach of fiduciary duty against Defendants, including Mr. Loeb. (Doc. 55.) Defendants opposed the motion on December 10, 2010. (Doc. 56.) The motion to remand is now submitted for decision.

///
///

---

[5] (Rough Reporter's Transcript, Nov. 1, 2010, 12:20-12:23.)

**4**

### III.  LEGAL STANDARD.

Federal courts have original jurisdiction over civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and the case is between citizens of different states.  28 U.S.C. § 1332.  Diversity jurisdiction under § 1332 requires that each plaintiff be diverse from each defendant.  *Exxon Mobil Corp. v. Allapattah Servs., Inc*., 545 U.S. 546, 553 (2005) (citing *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 375, (1978)).  To protect the jurisdiction of state courts, removal jurisdiction is strictly construed in favor of remand.  *Harris v. Bankers Life and Cas. Co.*, 425 F.3d 689, 698 (9th Cir. 2005) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09, (1941)).  Any doubt as to the right of removal must be resolved in favor of remand.  *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992). "Th[is] 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper."  *Id*. (internal citations omitted).

But removal is proper despite the presence of a non-diverse defendant if that defendant is a "fraudulently joined" or "sham" defendant.  *See Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996). A defendant has been fraudulently joined if the plaintiff fails to state a claim against a resident defendant, and the failure is "obvious according to the well-settled rules of the state." *United Computer Sys. v. AT & T Corp*., 298 F.3d 756, 761 (9th Cir. 2002). In the Ninth Circuit, a non-diverse defendant is deemed a sham defendant if, after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against

5

the party whose joinder is questioned. *Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1426 (9th Cir. 1989). A court may look beyond the pleadings to determine if a defendant is fraudulently joined, but "a plaintiff need only have one potentially valid claim against a non-diverse defendant" to survive a fraudulent joinder challenge. *See Knutson v. Allis-Chalmers Corp.*, 358 F. Supp. 2d 983, 993-95 (D. Nev. 2005) (summarizing cases); *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998). Accordingly, a defendant seeking removal based on an alleged fraudulent joinder must do more than show that the complaint at the time of removal fails to state a claim against the non-diverse defendant. *See Burris v. AT & T Wireless, Inc.*, 2006 WL 2038040, at 2 (N.D. Cal. 2006). Remand must be granted unless the defendant shows that the plaintiff "would not be afforded leave to amend his complaint to cure [the] purported deficiency." *Id.* at 2.

## IV.   DISCUSSION.

Incorporating language from the holdings of two Ninth Circuit cases, *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241 (9th Cir. 2009) and *Gaus v. Miles*, 980 F.2d 564, Plaintiffs argue that remand is appropriate because "the Court's previous orders demonstrate the Court's *doubt* regarding Loeb's liability." (Doc. 51 at 1:13)(emphasis added).[6] Plaintiffs' characterization of the

---

[6] Plaintiffs correctly observe that Ninth Circuit law holds that "any doubts are to be resolved in favor of state court jurisdiction and remand." *See Gaus v. Miles*, 980 F.2d at 566. As discussed in detail in the relevant Memorandum Decisions, however, there was no "doubt" given the severely underdeveloped original complaint. *Gaus v. Miles* was cited in § III of the May 12, 2010

6

May 12, 2010 Memorandum Decision is not accurate. There was no expression of "doubt" as that term is defined in *Gaus v. Miles* and *Moore-Thomas v. Alaska Airlines*. Rather, the Court expressly reserved the right to revisit the merits of the remand motion if "discovery reveal[ed] different facts." This reservation was based on the limited facts originally pleaded and Plaintiffs' counsel's oral request to amend.[7] A number of district courts in this Circuit have denied motions to remand, with leave to renew, based on the purported ability to cure a pleading deficiency via an amended complaint. *See, e.g., Garner v. Pac. Nw. Nat. Lab.*, No. CV-09-5056-RHW, 2009 WL 2973037 (E.D. Wash. Sept. 11, 2009). The same approach was followed here.

During oral argument on June 7, 2010 the Court explained that Plaintiffs' original complaint was factually and legally deficient to support remand in this case. Plaintiffs acknowledged these deficiencies and requested leave to amend, which was granted:

| | |
|---|---|
| COURT: | [W]e're not talking about active wrongdoing where the LLC and Buck, in effect, are conspiring or aiding and abetting each other. That's what [Plaintiffs' counsel] is talking about alleging. Am I right [counsel]? [...] |
| P's Counsel: | Yes, Your Honor, you're right [...] I conjure up the facts [...] |
| D's Counsel: | I do not think that there's any -- I don't think that there's anything that Mr. Conger |

---

Memorandum Decision. Its reasoning continues to apply.

[7] The express reservation in the May 12, 2010 Memorandum Decision was based on: the text of 28 U.S.C. § 1447(c); Plaintiffs' counsel's representations at oral argument that any pleading deficiency could be cured by an amended complaint; and the conclusory state court complaint, which formed the basis for Plaintiffs' lawsuit against Defendants Buck and Loeb.

|   |   |   |
|---|---|---|
| | | has said in court today that would give rise to individual liability to Harold Loeb. I think that it's also highly questionable whether he even said anything that has -- that could possibly give rise to liability for Buck Consultants. I think what he's basically alleging is a conspiracy between the County of StanCERA -- excuse me, Stanislaus County and the StanCERA Board. And that is something that we really had nothing to do with. And neither of those entities are parties to the action. And what he's basically alleging – |
| | THE COURT: | Well, here's what I understand him to be alleging. Your client knows better. They know how to do it right. But to keep employed and to keep earning fees, they're going along with StanCERA and the County. That's what I heard him say. That could state a claim. If he alleges it. He's got a Rule 11 that guides him. He needs a legal investigation and a factual investigation to support that. So you don't disagree with that, do you, as a matter of theory? |
| | D's Counsel: | I -- well, I mean, I think that, you know, in theory, I don't know what he's alleging. |
| | THE COURT: | Let's not be disingenuous [...] If you want to have credibility before this Court, then acknowledge reality and let's talk about what is being stated. Don't just give me there's no way in the world we could ever be liable for a claim here, because that's not true. Whether it comports with factual reality, whether it's legally based or not, that's something else. But if he alleges that to keep earning fees and to keep employed, that your client went along with StanCERA and the board to intentionally undervalue and actuarially, if you will, provide for inadequate contribution levels so this plan could not be viable, that could state a claim for breach of fiduciary duty and/or breach of contract. |
| | D's Counsel: | I think that there's an important distinction that needs to be made between the conclusory allegations and factual allegations. In Ashcroft versus Iqbal, the Supreme Court held that just alleging that there was some type of knowing violation |

8

> was still deemed to be a conclusory allegation that was insufficient. And the Court rejected it. I think that what he would have to be able to do is allege specific facts --
>
> THE COURT: Specifically make the allegations, that's right. Dot the I's and cross the T's, that's what I'm talking about. And so I think that's where we are in this case. He doesn't -- it isn't presently alleged.
>
> I don't see that I should deny him leave to amend.

(Doc. 42 at 32:3-34:3, 39:10-39:22.)

Plaintiffs filed a first amended complaint on August 2, 2010, advancing two claims against Loeb, the alleged "sham" defendant: (1) actuarial negligence; and (2) breach of fiduciary duty.[8] The SAC, filed on November 30, 2010, similarly raises claims for actuarial negligence and breach of fiduciary duty against Defendants, including Mr. Loeb. The SAC alleges, among other things, that Mr. Loeb concealed StanCERA's misconduct by signing false actuarial certification letters and aiding/abetting Buck's unlawful conduct. The SAC provides, in relevant part:

> 4. Defendant Harold Loeb ("Loeb") is an individual actuary who, based on information and belief, resides in California and was the principal actuary assigned by Buck to provide actuarial services to StanCERA [...]
>
> 26. As the health of the pension trust fund dramatically plunged, StanCERA imprudently and by the artifice of various actuarial schemes, manipulated the pension trust fund it administers in order to reduce County employer contributions by an at least $81.4 million, rather than to assure the competency of the assets of the plan. (See, Cal. Const., art. XVI, § 17(e) [requiring StanCERA's actuarial function be exercised "consistent with [its] exclusive fiduciary responsibilities" and "in order to assure the competency of the assets of the public pension or

---

[8] The breach of fiduciary duty claim was not pled in the original state law complaint.

9

retirement system"].) During this and all other periods, all County employees have continued to make their full contributions. These schemes included:

* Knowingly failing to collect in excess of $40 million in employer contributions that County owed to StanCERA in order to fund the pension trust fund. Although StanCERA claims this was due to an error of its actuary, Buck Consultants and Loeb, in "significant[ly] understat[ing] future Plan liabilities and costs," in almost two years since StanCERA claims to have discovered this error, it has not acted to collect this money from the County or pursue a claim against Buck for actuarial malpractice. Moreover, although in this case plaintiffs are acting to pursue a malpractice claim against Buck Consultants and Loeb for damages, with the proceeds to be paid to StanCERA for the benefit of all of its participants and beneficiaries, StanCERA has actively impeded the plaintiffs' ability to pursue that litigation and refused to cooperate with them.

* On or about April 28, 2009, StanCERA transferred $10 million from a nonvaluation reserve of pension trust funds to be used as the County's employer contribution from the County for fiscal year 2009-2010. In other words, because of this transfer, the County paid $10 million less into already severely underfunded pension trust fund than it otherwise would have paid. Thus, as a result, StanCERA had $10 million fewer assets that it otherwise would have.

* On or about April 28, 2009, StanCERA transferred an additional $50 million from a non-valuation reserve to valuation reserves for the purpose of further reducing the County's employer contributions (in addition to that alleged in paragraph 37). Because of this transfer, the County will pay $50 million less into already severely underfunded pension trust fund than it otherwise would have paid. Thus, as a result, StanCERA had millions of fewer assets than it otherwise would have.

* On or about April 28, 2009, even though the pension trust fund was underfunded in excess of one-half of one billion dollars, StanCERA adopted and has maintained a negative amortization scheme in which, according to StanCERA's actuary: "the amortization payment [required from the County under Government Code section 31453.5] in [each] year will be less that the interest on the unfunded amount—no payment towards 'principal' [debt] is made." This action was taken by StanCERA against the advice of

10

1          its actuary.

2     *    On or about June 9, 2010, StanCERA transferred
           another $21.4 million (in addition to the $10 million
           transfer alleged in paragraph 37 and the $50 million
           transfer alleged in paragraph 51) from a non-valuation
           reserve of pension trust funds to be used as the
           County's employer contribution from the County for
           fiscal year 2010-2011. In other words, because of this
           transfer, the County paid $21.4 million less into
           already severely underfunded pension trust fund than
           it otherwise would have paid. Thus, as a result,
           StanCERA will soon have $21.4 million fewer assets
           that it otherwise would have had.

33.   Defendants Buck and Loeb owed a duty to exercise due care in performing actuarial services for StanCERA.

34.   Buck and Loeb breached their duty of care in preparing StanCERA's January 9, 2007 actuarial valuation by using inappropriate actuarial assumptions.

35.   The defendants' negligence caused StanCERA, plaintiffs, and other beneficiaries of the pension trust fund to suffer harm, consisting of: (1) lost County employer contributions, (2) lost earnings on those contributions, and (3) costs paid to other actuarial firms to discover the defendants' negligence.

36.   The plaintiffs are informed and believe that the defendants' negligence had the effect of lowering the County's required, annual employer contribution to StanCERA by more than $40 million. The plaintiffs are informed and believe that the 9.22 percent employer contribution rate adopted by StanCERA, in reliance upon the actuarial valuation negligently prepared by Buck and Loeb, was insufficient to actuarially fund the benefits promised by the County. It was therefore a breach of fiduciary duty by StanCERA.

37.   StanCERA has a fiduciary obligation to pursue a negligence claim against Buck and Loeb to recover lost County employer contributions, earnings on those contributions, and the costs paid to other actuarial firms to discover the defendants' negligence. Such a claim is an asset of the pension trust. However, StanCERA has failed to assert that negligence claim in breach of its fiduciary obligations to its members, including the plaintiffs.

38.   StanCERA has not brought and will not bring a claim against Buck and Loeb because doing so would expose StanCERA's own breaches of fiduciary duty and violations of subdivisions (a), (b), (c), and (e) of section 17 of article XIV of the California Constitution, by permitting the pension plan to be underfunded and actuarial unsound, and would further

11

      **expose the actuarial schemes as set forth in paragraph 26, and would lead to greater funding by the County of the pension fund. Buck and Loeb have also concealed StanCERA's conduct alleged in paragraph 26 by signing false actuarial certification letters intended to mislead beneficiaries and the public. Loeb personally signed these false actuarial certification letters.**

39.   **Buck and Loeb have actively participated with, aided, and abetted in StanCERA's breach of fiduciary duty by (a) allowing the County to underfund the pension system as alleged in paragraph 26, and (b) concealing these actuarial schemes for years. Buck and Loeb did this with knowledge that StanCERA was breaching its fiduciary duties by permitting underfunding of the [] employees' pension trust and that their involvement with StanCERA's overall scheme as alleged in paragraphs 26 and 27 would further that scheme.**

40.   **Buck and Loeb have participated with, aided, and abetted in StanCERA's breach of fiduciary duty for their own financial gain, specifically, increased fees paid by StanCERA to Buck and Loeb. Plaintiffs allege on information and belief that Loeb personally profited from these increased fees.**

(SAC, ¶¶ 4, 26, 33-40)(footnotes omitted).

The parties sharply disagree whether the second amended complaint contains sufficient factual matter to state stand-alone actuarial negligence and/or fiduciary duty-based claims against Defendant Loeb. If it does, well-established Ninth Circuit law, including *Gaus v. Miles* and *Moore-Thomas v. Alaska Airlines,* command that the case be remanded based on a lack of complete diversity. Plaintiffs argue the second amended complaint includes specific factual matter delineating Loeb's fraudulent conduct, including signing false actuarial letters and aiding and abetting a conspiracy to underfund the pension system. Plaintiffs claim that these allegations of personal and professional impropriety resolve any dispute over Loeb's liability and support remanding the matter to state court.

Defendants disagree. In their view, the second amended complaint fails to cure the original defects, i.e., does not state a claim against Defendant Loeb whatsoever. Defendants explain:[9]

> Plaintiffs argue that their FAC cures the defects because they alleged that Loeb 'personally' signed false actuarial certification letters. Plaintiffs simply recycle an argument that the Court already considered and rejected [...] the FAC merely re-pleads a single cause of action against Loeb alleging negligence based on conduct within the course and scope of his employment that purportedly caused pecuniary loss [...]
>
> Plaintiffs also attempt to bring a factually unsupported and legally meritless second cause of action that Loeb can be held individually liable as a 'trust advisory with powers of directions.' Here, by contrast, Plaintiffs cannot identify any Government Code provisions regulating the StanCERA trust that gives 'power of direction over StanCERA funds to a private actuarial firm or its employee.

(Doc. 52 at 4:27-5:20.)

Defendants further assert that "[t]he SAC fails to plead [] *any facts* that Loeb knew the certification letter was purportedly 'false,' or that Loeb had any knowledge of, participated in, or (on information and belief) 'personally profited' from any actuarial 'schemes' by StanCERA to underfund the pension system [...] [t]hese conclusory allegations are properly disregarded." (Doc. 56 at 3:26-4:2)(emphasis in original).[10]

---

[9] This excerpt was taken from Defendants' opposition to the November 20, 2010 motion to remand, prior to the SAC being filed. As the first and second amended complaints are nearly identical, the arguments apply here with equal force.

[10] The law is unsettled regarding whether Loeb can be held liable on a negligence theory. *See Bear Valley Family v. Bank Midwest, N.A.*, No. CV-10-905-PSG-JEM, 2010 WL 3369600, at 4 (C.D. Cal. Aug 23, 2010)(finding that "Defendants have failed to establish that Plaintiffs' claim for negligent misrepresentation against Defendant Emmons obviously fails 'according to the settled

13

The SAC alleges that Loeb, individually, participated in a scheme to fraudulently underestimate and designate pension contribution levels to benefit StanCERA's breach of fiduciary duty to correctly fix annual contribution levels to relieve the county from the fiscal burden of doing so. *See, e.g., Cont'l Ins. Co. v. Foss Mar. Co.*, No. C 02-3936 MJJ, 2002 WL 31414315, at 6 (N.D. Cal. Oct. 23, 2002)("the standard is not whether [the] plaintiffs will actually or even probably prevail on the merits, but whether there is any possibility that they may do so."); *see also Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998) ("defendant must show that there is no possibility, based on the pleadings, that [the] plaintiff can state a cause of action against the non-diverse defendant in state court."). Particularly, Plaintiffs allege that Loeb aided and abetted an ongoing conspiracy by actively and personally engaging in the breach by himself knowingly signing false audit documents with unlawful fraudulent intent; he personally misled investors by concealing the fraudulent underreporting actuarial schemes; and he was one of the main participants in the alleged conspiracy involving the pension trust, its actuary and its lead individual actuary.

Defendants' interpretation of the law would make any action

---

rules of the state' [] [t]hus, Emmons's citizenship should not be disregarded under the doctrine of fraudulent joinder, and this case must be remanded for lack of subject matter jurisdiction."). As discussed *infra*, the *Bear Valley* decision provides a separate and independent basis to remand the case to the California Superior Court, County of Stanislaus. *See, e.g., Harris v. United Parcel Service, Inc.*, No. C-08-0315 MMC, 2008 WL 506141 (N.D. Cal. Feb. 22, 2008)(remanding the case to the superior court because the "law is unsettled with respect to a supervisor's liability for retaliation under FEHA.").

grounded in breach of fiduciary duties brought against a non-diverse defendant removable to federal court.[11]  This is not the law.[12]  No federal claim is asserted.  Plaintiffs' allegations are also sufficiently detailed to meet the heightened pleading requirements applicable to fraud-based claims, against the non-diverse defendant, even if a "claim of fraudulent joinder may be defeated even if the particularity requirements are not met."[13] *County of Hawaii v. Univev, LLC*, No. 09-00368-ACK-LEK, 2010 WL 520696, at 10 (D. Haw. Feb. 11, 2010)(citation omitted).  Plaintiffs have specified the documents it alleges to be fraudulently signed; why they were falsified; who signed them; and when they were submitted to the pension trust.  (SAC ¶¶ 26, 36-40.)  Defendants' argument that this is really a negligence dispute and not a breach of fiduciary, fraud, or aiding and abetting case, goes to the merits of whether they are liable;  but not to whether Plaintiffs have a cause of action against Loeb sufficient to defeat

---

[11] This hypothetical assumes, *arguendo*, that no federal claims are alleged and no other diverse parties were named as defendants.

[12] *See, e.g., Briano v. Conseco Life Ins. Co.*, 126 F. Supp. 2d 1293, 1296 (C.D. Cal. 2000) ("The removing party must prove that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the non-diverse defendant in state court.").

[13] Assuming, *arguendo*, that the particularity requirement of Rule 9(b) applies to breach of fiduciary duty claims.  *See generally TMX Funding, Inc. v. Impero Technologies, Inc.*, No. 10-00202-JF-PVT, 2010 WL 2509979, at 2 (N.D. Cal. June 17, 2010); *accord City of Driscoll, Texas v. Saenz*, No. C-06-543, 2007 WL 173232, at 5 (S.D. Tex. Jan. 17, 2007)("Courts have also applied the particularity requirement of Rule 9(b) to breach of fiduciary duty claims predicated on fraud.").

**fraudulent joinder.[14]  If the claim against Loeb is spurious, Defendants may reassert their diversity claim.**

**Accepting the allegations of the second amended complaint, Defendants cannot demonstrate, by clear and convincing evidence, that there is no possibility that Plaintiffs can state a claim against Loeb for breach of fiduciary duty or aiding/abetting a breach/fraud.  *See, e.g., Hamilton Materials Inc. v. Dow Chem. Corp*., 494 F.3d 1203, 1206 (9th Cir. 2007)(the removing defendant must prove by clear and convincing evidence that joinder was fraudulent)*; Knutson v. Allis-Chalmers Corp*, 358 F. Supp. 2d at 993-95 ("A plaintiff need only have one potentially valid claim against a non-diverse defendant" to survive a fraudulent joinder challenge.); *accord Altman v. HO Sports Co., Inc.*, No. 1:09-1000 AWI SMS, 2009 WL 2590425, at 2 (E.D. Cal. Aug. 20, 2009) ("Stated differently, if there is a non-fanciful possibility that the plaintiffs can state a claim against the non-diverse defendant, the [district] court must remand.").  To the extent a relatively close question is presented, the Ninth Circuit requires "any doubts about removability [be] resolved in favor of remanding the case to state court."  *Barahona v. Orkin,* No. 08-CV-04634-RGK-SHX, 2008 WL 4724054, at 1 (C.D. Cal. Oct. 21, 2008)(citing *Shamrock Oil & Gas Corp*., 980 F.2d at 566 (9th Cir. 1992)*; see also Gaus v. Miles*, 980 F.2d at 566 ("Federal jurisdiction must be rejected if there is any**

---

[14] This case presents a completely different scenario from *Morris v. Princess Cruises*, *Inc*., 236 F.3d 1061 (9th Cir. 2001), affirming the trial court's "sham defendant" finding because: "it is abundantly obvious that [Plaintiff] could not possibly prevail on her negligent misrepresentation claim against [Defendant]." *Id*. at 1068.

16

**doubt as to the right of removal in the first instance.")(citing** *Libhart v. Santa Monica Dairy Co.*, **592 F.2d 1062, 1064 (9th Cir. 1979)).**

**The allegations must be accepted as true; individually, knowingly signing fraudulent certification letters and aiding employer misconduct with wrongful intent are not merely "corporate duties" performed in the course and scope of one's employment.[15] Fraudulent intent and wrongful conduct to facilitate a breach of statutory fiduciary duties are not within the course and scope of employment.[16]  Under the SAC, Loeb is not a "sham" defendant.  The motion is GRANTED.**

**There is an additional reason to remand this case.  In this Circuit, district courts "may not make final determinations with regard to questions of state law that are not well-settled."**

---

[15] Plaintiffs argue that the second amended complaint's allegations fall outside *United States Liability Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal.3d 586 (1970) and its progeny. Plaintiffs are correct, however, whether *Haidinger-Hayes* is good law is unclear given the discussion in *Bear Valley,* 2010 WL 3369600.

[16] Defendants cite *Slottow v. American Casualty Co.*, 10 F.3d 1355 (9th Cir. 1993) for the proposition that "the individual cannot be held liable for breach of fiduciary duty by virtue of signing documents in the course and scope of his employment on behalf of the corporate defendant." (Rough RT, Nov. 1, 2010, 6:17-6:21.)  However, knowingly signing false audit documents with unlawful fraudulent intent and concealing a fraudulent underreporting actuarial scheme are courses of conduct for which the defendants can be individually liable because such conduct is never within the course and scope of employment. *See, e.g., Carolina Cas. Ins. Co. v. RDD, Inc.*, 685 F. Supp. 2d 1052, 1058 (N.D. Cal. 2010) (finding that "the present case [involving allegations of improper conduct and fraudulently signed documents] is distinguishable from one in which corporate officers are not liable solely by reason of their official position.").

*Knutson v. Allis-Chalmers Corp.*, 358 F. Supp. 2d 983, 995 (D. Nev. 2005).[17] The May 12, 2010 Memorandum Decision found that, based on *United States Liability Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal.3d 586 (1970), Loeb could not be held liable for action taken within the course and scope of his employment where those acts are alleged to have caused only economic injury. However, on August 23, 2010, District Judge Gutierrez of the Central District of California reached a different conclusion. *See Bear Valley Family v. Bank Midwest, N.A.*, No. CV-10-905-PSG-JEM, 2010 WL 3369600 (C.D. Cal. Aug 23, 2010). Judge Guiterrez determined that recent California law demonstrated a shift away from *Haidinger-Hayes* and that an employee, working within the scope of their employment, *could* be held liable in tort for pecuniary losses. *Id.* at 4. This is non-binding but persuasive authority given the review and application of related Ninth Circuit and California law.

In *Bear Valley*, plaintiffs filed suit in California state court against a bank, the bank owner, and one of its Senior VP's, asserting a variety of tort and contract claims, including fraud and negligent misrepresentation. Defendants removed the case on the basis of diversity jurisdiction, arguing that the Senior VP's California citizenship should be disregarded because he was a "sham" defendant who was fraudulently joined in this action for the purpose of defeating diversity jurisdiction. Plaintiffs subsequently moved to remand the action to state court. Citing

---

[17] *See Mercado v. Allstate Ins. Co.*, 340 F.3d 824, 826 (9th Cir. 2003) (joinder of a resident defendant is fraudulent only if "plaintiff fails to state a cause of action against a resident defendant, and the failure is *obvious according to the settled rules of the state*.")(emphasis added).

*Haidinger-Hayes*, defendants argued that the Senior VP could not be held liable because he was acting within the course and scope of his employment and plaintiffs only alleged pecuniary injury. He was therefore a "sham" defendant. Judge Gutierrez disagreed, finding that "recent statements from California courts concerning relevant tort and agency principles, including the principle that [a]n agent or employee is always liable for his own torts, whether his employer is liable or not."[18] *Bear Valley*, 2010 WL 3369600, at 4. Judge Gutierrez also noted that Haidinger-Hayes was at odds with another Central District case, *Black Donuts, Inc. v. Sumitomo Corp. of Am.*, 2010 U.S. Dist. LEXIS 30859 (C.D. Cal. Mar. 3, 2010). For those reasons, Defendants' "sham" defendants arguments were rejected and the matter was remanded to state court.

Although *Bear Valley* is not factually identical to this case,[19] it did analyze the California law on whether an employee can be held liable for actions taken during the "course and scope" of employment, when only economic injury arises. Here there is a legitimate dispute Loeb was acting within the course and scope of his employment; an issue for the trier of fact to resolve. *Bear*

---

[18] The state court authorities cited in *Bear Creek* included *Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone*, 107 Cal. App. 4th 54 (2003).

[19] The *Bear Creek* plaintiffs alleged that, among others things, the individual defendant - the Senior Banking Executive - tried to "extort a Dunkin' Donuts franchise in exchange for construction funding are barred by the statute of frauds and do not establish detrimental reliance or damages." *Id*. at 5. Here, Plaintiffs allege that Defendant Loeb committed actuarial negligence and conspired with Defendant Buck to manipulate actuarial information. Although not identical, both cases involve allegations of misconduct on the part of key personnel.

*Valley* recognized the law is not settled and that remand was appropriate. *Id.* at 5. It highlights an ambiguity/shift in the relevant state law, not raised in any of the parties' briefing to date. However, whether the issue was formally raised by the parties is not controlling. See 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").[20] For all the reasons discussed in *Bear Valley*, Loeb is not a sham defendant and the matter is remanded to state court.

### V. CONCLUSION.

For all the reasons stated:

1. Plaintiffs' renewed motion to remand this case to the Stanislaus County Superior Court is GRANTED. This action is hereby REMANDED to the Superior Court of the State of California, in and for the County of Stanislaus;

2. Defendants' motion to dismiss, filed on August 30, 2010, is DENIED as moot.

IT IS SO ORDERED.

Dated: March 7, 2011           /s/ Oliver W. Wanger
                               UNITED STATES DISTRICT JUDGE

---

[20] Plaintiffs, however, implicitly raised the issue in their opposition to Defendants' motion to dismiss, Doc. 48, and its renewed motion to remand, Doc. 51.